UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

United States of America,
      Plaintiff

    v.                                     Case No. 08-cv-499-SM
                                           Opinion No. 2011 DNH 105
David M. Hulick and
Caroline P. Hulick,
      Defendants/
      Counterclaim Plaintiffs

and

State of New Hampshire
Department of Employment Security,
      Defendant

**O R D E R**

In early 2007, the Secretary of the Treasury determined that Precision Valley Aviation, Inc., and seven related companies had failed to pay over to the Internal Revenue Service more than $500,000 in federal income taxes and F.I.C.A. contributions that had been withheld from employee paychecks in 1994.  As of October 31, 2007, the IRS calculated that, with accrued interest, it was owed more than $2 million.  It also determined that, by virtue of his position at Precision Valley Aviation (and/or one or more of the related companies), David Hulick was a person responsible for collecting and paying over to the IRS those taxes and F.I.C.A. contributions.  Accordingly, the government looked to

him personally for payment of those outstanding obligations, plus accrued interest.

Approximately eleven years after issuing the assessments against Hulick, and following nearly two years of periodic payments from him, as well as at least three failed settlement efforts, the government brought suit against Hulick (and his wife) seeking: (a) to reduce to judgment all unpaid tax liabilities for which Hulick is responsible (known as trust fund recovery penalties); (b) establish the validity of federal tax liens levied against all property owned by Hulick; (c) foreclose the liens upon Hulick's home in New Boston, New Hampshire (in which his wife has an interest); and (d) permit a judicial sale of that property. Hulick answered the government's complaint, denied any remaining liability, and advanced several counterclaims.

The government now moves to dismiss those counterclaims, on grounds that none states a viable cause of action and, in any event, this court lacks subject matter jurisdiction over them. Hulick objects. For the reasons discussed below, the government's motion is granted in part and denied in part.

**Standard of Review**

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must "accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader." S.E.C. v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010). Although the complaint need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), it must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citation and internal punctuation omitted).

In other words, "a [pleader's] obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Instead, the facts alleged in the complaint (or counterclaim) must, if credited as true, be sufficient to "nudge[] [pleader's] claims across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of

3

mere conjecture, the complaint is open to dismissal." <u>Tambone</u>, 597 F.3d at 442.

## Background

According to his amended answer and counterclaims, Hulick began working for Precision Valley Aviation, Inc., in 1990, as its Vice President and Chief Financial Officer. Precision struggled financially and on several occasions it failed to make timely payroll tax payments to the IRS on behalf of its employees (and, apparently, the employees of its related entities). Typically, however, the company was eventually able to pay the amounts owed, as well as any penalties and/or fines that had been assessed. But, in 1994, it went out of business before it brought its obligations to the IRS current. Although Hulick says he did not actively participate in decisions to withhold tax payments due the IRS, he was aware of the company's practice of doing so and "ensured that the owners were at all times aware of the amount and nature of the non-payment of taxes." Amended Answer and Counterclaims (document no. 33) at para. 28. Eventually, because of Hulick's position in the company, the IRS deemed him a "responsible person" and assessed him for the unpaid payroll taxes.

On February 3, 1997, the IRS made the first assessment against Mr. Hulick, for tax period ended June 30, 1994. And, six weeks later, on March 17, 1997, it made the second assessment against Hulick, for tax period ended on Sept. 30, 1994. Each was subject to a collection limitations period of ten years, the last day of which is known as the "Collection Statute Expiration Date" or "CSED." See 26 U.S.C. § 6502(a). But, that ten-year limitations period is tolled while any offer-in-compromise is pending, plus 30 days after IRS rejects that offer. See 26 U.S.C. § 6331(k)(1) (when offer in compromise is pending, and for 30 days after any rejection, IRS may not levy against those unpaid taxes); 26 U.S.C. § 6503(a)(1) (the CSED is tolled during any period during which the IRS may not levy).

In an effort to satisfy his obligations to the IRS, Hulick made three separate offers-in-compromise: (1) the first was made on February 4, 1998, and rejected on February 22, 2001; (2) the second was made on March 4, 2002, and rejected on July 27, 2002; and (3) the last was made on October 4, 2002, and rejected on November 17, 2003. Each tolled the applicable limitations period for at least a portion of the time during which it was pending - the precise (and fairly complex) calculation is set forth in the government's reply memorandum and involves the interplay of three

federal statutes.  See Government's reply (document no. 35) at 4-8.

In December of 2006, Hulick met with representatives of the IRS, who acknowledged that the IRS claims against him had been pending for many years and stated their commitment to resolving them.  By letter dated December 19, 2006, an IRS employee gave Hulick a written calculation of the Collection Statute Expiration Date for each of the assessments for which he was liable.  According to that letter, "[t]he earliest collection statute will expire August 8, 2008 and <u>the last statute will expire October 1, 2008</u>."  Exhibit A, Amended Answer (document no. 33-1) (emphasis supplied).  The author went on to state that, based upon financial information Hulick had recently provided to the IRS, "he could afford to pay $3,147.00 per month toward his tax obligation," and "if he takes no action to resolve the account, [the IRS] will take action to collect the balance due."  Id.

Shortly after receiving that letter, and pursuant to the IRS's request, Hulick began making monthly payments of approximately $4,000.[1]  He continued making those payments until

---

[1] Hulick administratively appealed the finding that he could afford to pay approximately $3,200 per month.  He lost that appeal when the IRS concluded that he could actually afford to pay $4,058 per month.

September 1, 2008, by which time he had paid a little more than $72,000 to the IRS.  At that point, he says he believed his obligations to the IRS had been satisfied and all relevant collection statutes had expired.  Perhaps not surprisingly (given the existence of this litigation), the IRS took a different view.

By letter dated November 5, 2008, the IRS notified Hulick that, according to its calculations, he still owed more than $2 million.  Additionally, the IRS informed Hulick that the Collection Statute Expiration Dates it had previously provided to him were inaccurate and, after reviewing the file and re-calculating the relevant tolling periods, it concluded that they ran until at least July of 2009.  Hulick does not take issue with the government's revised calculation of the CSEDs.  He does, however, assert that the government should be bound by its earlier representation that the relevant limitations periods all expired on or before October 1, 2008.  In December of 2008, the government filed this action.

## Discussion

In his amended answer and counterclaim, Hulick advances five counterclaims against the government:

  Count 1:  Declaratory judgment that the government's claims
            against him are time-barred;

  Count 2: Unauthorized Collection Action (26 U.S.C. §§ 6304(a) and 7433);

  Count 3: Harassment and Oppression (26 U.S.C. §§ 6304 and 7433);

  Count 4: Unreasonable Rejection of a Settlement Offer; and

  Count 5: Breach of Contract, based upon the December 19, 2006 letter.

He also advances a claim (labeled "Count 6") in which he asserts that he is entitled to recover his attorney's fees, pursuant to 26 U.S.C. § 7430.

I. <u>Declaratory Judgment and Attorney's Fees</u>.

  Hulick's efforts to obtain a declaratory judgment that the government's action against him is timed-barred is somewhat misplaced. It is more appropriately viewed as an affirmative defense to the government's claims, which will be resolved in due course, upon a more fully developed record. Moreover, the Declaratory Judgment Act specifically excludes from its scope claims "with respect to Federal taxes." 28 U.S.C. § 2201(a). Count one of Hulick's counterclaims is, therefore, dismissed.

  Count six of Hulick's counterclaims, in which he seeks an award of attorney's fees, is not properly viewed as a free-standing "claim," "counter-claim," or "cause of action." It is, instead, an element of relief to which Hulick may be entitled,

8

should he prevail in this litigation. Consequently, it is dismissed, without prejudice. If, at the conclusion of this litigation, Hulick may properly be viewed as a prevailing party and otherwise meets the requirements set forth in 26 U.S.C. § 7430, he will obviously be free to petition the court - at that time - for an award of fees.

II. <u>Claims of Unauthorized Collections</u>.

In counts two, three, and four of his counterclaims, Hulick advances various theories as to why the IRS collection efforts against him are unlawful and why he is entitled to an award of damages. But, as the government points out, Hulick did not properly exhaust available administrative remedies - a pre-requisite to pursuing counterclaims of that sort.

Section 7433(a) of Title 26 of the United States Code provides that:

> If, in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence <u>disregards any provision of this title</u>, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States.

26 U.S.C. § 7433(a) (emphasis supplied). Here, Hulick claims that agents of the IRS negligently, recklessly, or intentionally

improperly calculated the applicable CSED's.  But, the statutes upon which Hulick relies merely provide the means by which one can, if he or she desires, calculate the CSED.  They do not appear to obligate the IRS to provide taxpayers with a properly-calculated CSED.  It is, then, difficult to see how an IRS agent can be deemed to have "disregard[ed] a provision" of the tax code by voluntarily providing the taxpayer with a statement (albeit an erroneous statement) of the relevant CSED's.  See generally Gonsalves v. I.R.S., 975 F.2d 13, 15-16 (1st Cir. 1992).  And, Hulick has pointed to no precedent, whether binding or merely persuasive, that supports his view that such an error is actionable under section 7433.

But, even if the IRS's failure to properly calculate the CSED's (and its filing of suit after those erroneously calculated dates) could be actionable under section 7433, Hulick's claims suffer from a dispositive defect: a taxpayer cannot pursue any claim for damages against the United States under section 7433 unless he or she has first "exhausted the administrative remedies available to such plaintiff with the Internal Revenue Service." 26 U.S.C. § 7433(d)(1).  And, as the court of appeals has noted, "Section 7433's waiver of sovereign immunity, like any other, must be strictly observed and construed in favor of the sovereign."  Gonsalves, 975 F.2d at 15 (citations and internal

punctuation omitted).  Consequently, prior to filing this suit, Hulick must have strictly complied with Section 7433(d)(1)'s administrative exhaustion requirement.

Federal regulations specify the means and procedures by which a taxpayer may pursue an administrative claim against the IRS.  See Treas. Reg. § 310.7433-1(e), 26 C.F.R. § 301.7433-1(e). Among other things, those regulations provide that any administrative claim filed with the IRS must include: the name, address, and contact information of the taxpayer; the grounds for the claim; a description of the injuries incurred; and the dollar amount of the claim.  Those regulations go on to provide that a taxpayer cannot maintain an action for damages in excess of the amount specified in the administrative claim, unless the increased amount is based upon newly discovered evidence.  26 C.F.R. § 301.7433-1(f).

Hulick did not strictly comply, nor does he claim to have strictly complied, with those regulations.  Instead, he says his various administrative appeals to the IRS put the IRS on notice of his claims and should be adequate to constitute compliance with the administrative exhaustion requirement.  As noted above, however, that is not enough; a taxpayer must fully and strictly comply with those administrative regulations before filing suit

in federal court.  Partial compliance, or the argument that the IRS had notice of a taxpayer's claims, is not sufficient.

> Though [plaintiff] alleges in his papers that he has pursued every administrative remedy available to him, it is clear to the Court that he has not complied with the specific administrative procedures set forth under the regulations in order to preserve a claim for damages.  While he did take a number of steps seeking primarily to stop the levy, his failure to follow the specific procedures for pursuing a damage claim deprives this Court of jurisdiction to hear it.

Bullard v. United States, 486 F. Supp. 2d 512, 518 (D. Md. 2007).  See also Rae v. United States, 530 F. Supp. 2d 127, 130 (D.D.C. 2008); Hallinan v. United States, 498 F. Supp. 2d 315, 317-18 (D.D.C. 2007); Bennett v. United States, 361 F. Supp. 2d 510, 514-15 (W.D. Va. 2005).

Finally, Hulick is incorrect in asserting that the Federal Tort Claims Act, 28 U.S.C. § 2674 et seq., excuses him from administratively exhausting his claims.  The court of appeals for this circuit has specifically addressed, and rejected, that claim:

> We start with the basic proposition that sovereign immunity bars lawsuits against the United States unless the United States has waived that immunity.  This axiom forecloses reliance on . . . the jurisdictional statute[] that the [plaintiffs] cite as bases for their claim for damages against the United States.  The Federal Tort Claims Act, 28 U.S.C. § 2674 et seq., waives sovereign immunity in many circumstances for tort claims, but specifically excepts from its coverage

> "[a]ny claim arising in respect of the assessment or collection of any tax . . .." 28 U.S.C. § 2680(c).

<u>McMillen v. U.S. Dep't of Treasury</u>, 960 F.2d 187, 188 (1st Cir. 1991) (citation omitted).

Consequently, counts two, three, and four of Hulick's counterclaims must be dismissed.

III. <u>Breach of Contract</u>.

Charitably construed, count 5 of Hulick's counterclaims asserts that the IRS breached what was, in essence, a settlement agreement. The terms of that agreement are said to be found in the letter dated December 19, 2006, from I.R.S. Revenue Officer Mary Beyers. In that letter, Beyers: (a) informed Hulick (erroneously, it would seem) that the last CSED expired on October 1, 2008; (b) concluded that Hulick could pay at least $3,100 per month toward his tax obligation (subsequently increased to roughly $4,000 per month); (c) asked that he begin making "voluntary payments toward the tax obligation"; and (d) stated that if he "takes no action to resolve the account, I will take action to collect the balance due." Exhibit A, Amended Complaint and Counterclaims (document no. 33-1).

13

Again, liberally construing Hulick's pleadings, it is at least colorable that Beyers' letter represents an offer, on behalf of the IRS, to forego any litigation and/or levies aimed at collecting the debt, provided Hulick begins (and continues) making the specified "voluntary" payments through the CSED. Under that scenario, Hulick accepted the offer by dutifully making those monthly payments throughout the period specified in Beyers' letter.  When, at the end of that term, the IRS filed this suit, Hulick had obvious reason to think that the IRS had gone back on its commitment, and at least a plausible claim that the government breached its settlement agreement.  And, viewed in the light most favorable to Hulick, his breach of contract counter-claim arguably seeks to hold the government to its end of the bargain.  That is, he is seeking specific performance of that settlement agreement (or perhaps raises issues of estoppel), rather than damages as a consequence of its breach.

Perhaps because Hulick's counterclaim is less than a model of clarity (and because the construction given above is, as noted, a charitable one), the government simply addresses it as a claim for damages.  And, as such, the government points out that because Hulick would likely be seeking more than $10,000 in damages (if that is, indeed, the remedy he seeks), this court lacks subject matter jurisdiction.  See 28 U.S.C. §

14

1346(a)(2)(a). The government has not, however, asserted that Hulick cannot bring an action to specifically enforce the (alleged) settlement agreement with the IRS nor has it briefed that issue. Consequently, the court concludes that dismissal (or transfer to the Court of Claims) of Hulick's breach of contract claim is, at least at this juncture, premature.[2]

## Conclusion

For the foregoing reasons, the government's motion to dismiss (document no. 26) is granted in part, and denied in part. Counts one, two, three, and four of Hulick's counter-claims are

---

[2] In the end, regardless of how the claim advanced in count five is construed, it might well be that it must be filed in (or transferred to) the Court of Claims. See, e.g., Suburban Mortg. Assocs. v. U.S. Dep't of Housing & Urban Develop't, 480 F.3d 1116, 1118 (Fed. Cir. 2007) ("despite [plaintiff's] valiant effort to frame the suit as one for declaratory or injunctive relief, this kind of litigation should be understood for what it is. At bottom it is a suit for money for which the Court of Federal Claims can provide an adequate remedy, and it therefore belongs in that court."). Additionally, to the extent that Hulick's contract claim can plausibly be read to seek specific performance, rather than monetary damages, the government may assert that it is immune from such claims. See generally Richard Seamon, Separation of Powers and the Separate Treatment of Contract Claims against the Federal Government for Specific Performance, 43 Vill. L. Rev. 155 (1998) ("[T]he government's liability for contract damages is well-settled. In contrast, the government has always been immune from awards of specific performance in contract actions, on the theory that this type of relief would unduly interfere with government operations."). See also Up State Fed. Credit Union v. Walker, 198 F.3d 372 (2d Cir. 1999); Megapulse, Inc. v. Lewis, 672 F.2d 959 (D.C. Cir. 1982). But, the parties should have the opportunity to engage on those specific issues and brief their respective positions.

dismissed. Count six (attorney's fees) is dismissed, without prejudice. Accordingly, the sole remaining counterclaim is count five (breach of contract).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

June 30, 2011

cc: Andrea A. Kafka, Esq.
    Richard J. Lavers, Jr., Esq.
    Daniel E. Will, Esq.
    Joshua M. Wyatt, Esq.